UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.M.,<br>            Plaintiff,<br>    v.<br>MARTIN J. O'MALLEY,<br>            Defendant. | Case No. 23-cv-04889-NC<br><br>**ORDER REVERSING ADMINISTRATIVE LAW JUDGE DECISION AND REMANDING FOR AWARD OF BENEFITS**<br><br>Re: ECF 22, 26, 29 |

Claimant A.M. appeals an Administrative Law Judge's denial of disability benefits for the period beginning May 1, 2016, and seeks reversal and remand for an immediate award of benefits. A.M.'s central argument is that the ALJ erred in finding A.M.'s substance abuse material to the disability determination. In addition, A.M. argues the ALJ improperly weighed and credited medical opinions, substituted his own opinion in place of medical opinions, and relied on past relevant work and education findings unsupported by substantial evidence. The Commissioner of Social Security agrees reversal of the ALJ's decision and remand are appropriate, but does not concede any specific reversible errors by the ALJ. Rather, the Commissioner argues the Court should remand for further proceedings and not for the award of benefits. As discussed below, the Court REVERSES the ALJ's decision and REMANDS for the award of benefits because the ALJ erred in finding A.M.'s substance abuse material to the disability determination.

## I. BACKGROUND

### A. Procedural History

On July 1, 2020, A.M. filed an application for Title XVI disability benefits for the period beginning May 1, 2016. AR 20, 198. The Commissioner denied the claim initially and upon reconsideration. AR 20. A.M. requested a hearing, which occurred before an ALJ on May 24, 2022. AR 20. The ALJ issued an unfavorable decision on July 27, 2022, and the Appeals Council denied review. AR 1, 17.

A.M. appealed the ALJ's decision to the Court on September 5, 2023. ECF 1. A.M. filed a brief in support of reversal and remand pursuant to 42 U.S.C. § 405(g). ECF 22 (Mot.). The Commissioner opposed and filed a cross-motion for voluntary remand. ECF 26 (Opp'n). A.M. replied. ECF 29 (Reply). All parties have consented to magistrate judge jurisdiction. ECF 4, 13.

### B. ALJ Decision

The Court highlights the parts of the ALJ's decision most relevant to this appeal. The ALJ followed the five-step sequential analysis under 20 CFR 416.920(a) to determine whether A.M. has been disabled since May 1, 2016. AR 21. At the first three steps, the ALJ concluded: (1) A.M. had not engaged in substantial gainful activity since his alleged disability onset date of May 1, 2016; (2) A.M. has severe impairments including generalized anxiety disorder, major depressive disorder, PTSD, opioid use disorder, alcoholism, and right-sided inguinal hernia; and (3) A.M.'s impairments, including his substance abuse, meet the paragraph A and B criteria for listing 12.15, trauma- and stressor-related disorders. AR 23–24. In making these findings, the ALJ relied on the medical opinions of Drs. Arnold and Wiebe, which he found persuasive based on the tests conducted by both doctors and other evidence in the record. AR 25. The ALJ found the opinion of Dr. Catlin less persuasive, and her evaluation of A.M.'s limitations supported only when A.M. used substances. AR 25. The ALJ also found Dr. Khoi's opinion less persuasive because it was unsupported by the results of tests and evaluations he conducted with A.M. as part of his examination. AR 25.

Because the ALJ concluded A.M.'s medically determinable impairments include alcohol and opioid abuse, he conducted a second five-step sequential analysis pursuant to Social Security Ruling 13-2p to determine whether A.M.'s substance use is material to the disability determination. AR 26. At step two of the materiality analysis, the ALJ determined that A.M. still had a severe impairment or combination of impairments absent substance use. AR 26. At step three, the ALJ determined A.M.'s impairments would not meet a listing absent substance use. AR 26. The ALJ relied on jail records, Dr. Catlin's opinion, and treatment notes from Dr. Arnold. AR 26–28. The ALJ continued through the second sequential analysis to find A.M.'s substance use material to the disability determination because he would not be disabled absent substance use. AR 29–32.

## II.     LEGAL STANDARD

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance"). Even when the ALJ commits legal error, the decision must be upheld if the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

## III.   DISCUSSION

The parties do not dispute the ALJ's first sequential analysis finding A.M. disabled at step three when including substance use. The key dispute occurs at step three of the second sequential analysis finding A.M.'s impairments would no longer meet listing 12.15 absent substance use, effectively rendering his substance use material.

If an ALJ determines that a claimant is disabled based on all their medically determinable impairments, one of which is drug addiction and alcoholism (DAA), the ALJ must determine whether the DAA is a contributing factor material to the disability determination. SSR 13-2p(a).[1] To do so, the ALJ conducts a second five-step sequential analysis to determine whether the claimant would still be disabled if they stopped using drugs or alcohol. SSR 13-2p(a). DAA is material "if the claimant's other impairment(s) would improve to the point that the claimant would not be disabled in the absence of DAA." SSR 13-2p ¶ 5(f)(iii). DAA is not material "if the claimant's other impairment(s) would not improve to the point that the claimant would not be disabled in the absence of DAA." SSR 13-2p ¶ 5(f)(iii). The ALJ must deny the claim if DAA is material. SSR 13-2p ¶ 5(f)(iii).

To find that DAA is material when a claimant has co-occurring mental disorders, the ALJ "must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA." SSR 13-2p ¶ 7(b). The ALJ cannot rely only "on medical expertise and the nature of a claimant's mental disorder," or seek "medical opinions that project the nature, severity, and functional effects if the claimant were to stop using drugs or alcohol." SSR 13-2p ¶ 7(b) & n.19.

### A.   The ALJ Committed Legal Error by Concluding A.M.'s Substance Use is Material

The ALJ committed reversible error at step three of the materiality analysis. First,

---

[1] Although Social Security Rulings "do not have the force of law," courts give them deference unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

the ALJ appears to require a heightened burden of proof from claimant that is unsupported by SSR 13-2p. Second, the ALJ's conclusion that A.M. no longer meets paragraph B of listing 12.15 absent substance use is not supported by substantial evidence.

The ALJ is correct that the claimant bears the burden of proof at step three, including to prove disability during the materiality analysis. *See* AR 26; SSR 13-2p ¶ 5(a). However, the ALJ also states:

> The claimant, who was represented by an attorney, did not provide any evidence to suggest that his impairments, either singly or in combination, met or medically equaled the requirements of a listed impairment when the substance abuse stopped. There is no substantial evidence present in the record to indicate that the claimant's impairments, either singly or in combination, met or medically equaled the requirements of a listed impairment as described at 20 CFR Part 404, Subpart P, Appendix 1 when he was sober or decreased his substance abuse.

AR 26. A claimant need not present, as the ALJ suggests, affirmative "evidence from a period of abstinence for the claimant to meet his or her burden of proving disability." SSR 13-2p ¶ 5(a). Nor does a claimant need to present separate, additional evidence for the materiality analysis. The correct standard for determining DAA materiality is in fact the inverse: "We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and *the evidence does not establish* that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA." SSR 13-2p ¶ 7(d) (emphasis added); *see also* SSR 13-2p ¶ 9(b) ("To find that DAA is material, we must have evidence in the case record demonstrating that any remaining limitations were not disabling during the period."). Affirmative evidence is only required to establish materiality, not the absence of it.

Applying the correct standard here, there is not substantial evidence in the record demonstrating A.M.'s mental health issues would improve absent substance use such that they are not disabling. The ALJ therefore erred in finding materiality.

The ALJ made two factual conclusions when assessing materiality at step three that led him to determine A.M. would no longer meet the paragraph B criteria for listing 12.15

absent substance use.² Specifically, the ALJ found that absent substance use, A.M. has a moderate, rather than marked, limitation in his ability to concentrate, persist, or maintain pace, and a moderate, rather than marked, limitation in his ability to manage oneself. AR 27–28. The ALJ supports these findings by pointing to A.M.'s jail records, the medical opinion of Dr. Catlin, and excerpts of treatment notes from Dr. Arnold, none of which constitute substantial evidence. *See* AR 25–28.

### 1. Jail Records

First, the ALJ refers to A.M.'s jail records as originating "presumedly during a period of sobriety or minimal substance abuse." AR 26. He states that the jail records reveal "relatively normal mental status findings with the claimant receiving minimal treatment," which do "not support more than mild or moderate mental limitations." AR 25, 27. Yet the jail records themselves demonstrate that they are not a reliable indicator of A.M.'s mental health status absent substance use. Medical forms completed during A.M.'s jail intakes and transfers almost all note that A.M. was under the influence and/or reported recent substance use or addiction. AR 705, 707, 710, 711 (August 2018, December 2018, July 2020, and March 2021 intake forms indicating arrestee under the influence and addicted); AR 709 (May 2019 intake form indicating arrestee under the influence); AR 712

---

² One way to meet the 12.15 listing for trauma- and stressor-related disorders is to satisfy paragraphs A and B, which require:

  A. Medical documentation of all of the following:
    1. Exposure to actual or threatened death, serious injury, or violence;
    2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
    3. Avoidance of external reminders of the event;
    4. Disturbance in mood and behavior; and
    5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

AND

  B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
    1. Understand, remember, or apply information (see 12.00E1).
    2. Interact with others (see 12.00E2).
    3. Concentrate, persist, or maintain pace (see 12.00E3).
    4. Adapt or manage oneself (see 12.00E4).

(December 2018 opioid withdrawal form indicating last used drugs that day, and years of daily heroin and cocaine use); AR 716 (August 2018 alcohol withdrawal form indicating last consumed hard liquor ten hours earlier); AR 720 (July 2020 transfer form indicating chronic heroin use); AR 728 (December 2018 discharge prescription for Narcan). The many pages of time-stamped health logs that follow, and are cited by the ALJ, are from medical intake or COWS (clinical opiate withdrawal score) screenings conducted every few hours in the days immediately after A.M.'s arrival at the jail. *See* AR 730–943.

As a result, these records do not provide substantial evidence for A.M.'s mental state absent substance use because he was either actively or very recently under the influence of drugs and/or alcohol. SSR 13-2p ¶ 9(a)–(b) explains that "the acute and toxic effects of substance use or abuse may subside in a matter of weeks, while in others it may take months or even longer to subside" and, especially in the case of co-occurring mental disorders, "the claimant should be abstinent long enough to allow the acute effects of drug or alcohol use to abate" before assessing their materiality.

What's more, the jail records do not appear to be reliable indicators of A.M.'s mental health status at all, with or without substance use. To the extent the health logs suggest A.M. was not experiencing anxiety, hallucinations, or other mental health symptoms, these medical check-ins appear designed only to measure A.M.'s withdrawal symptoms and acute risk for a couple-days period, rather than his comprehensive mental health. *See, e.g.*, AR 714, 718.[3] A.M. also frequently declined the health screenings, leading jail personnel to seemingly complete the questions based only on what they witnessed. *See, e.g.*, AR 191 ("Patient verbally refused COWS monitoring and vital signs. ROR witnessed and signed by Deputy and RN.") A.M. also provided responses that were inaccurate, as evidenced by the record and the ALJ's findings, further undermining the reliability of these records. *See, e.g.*, AR 772, 781 (denying any mental health problems in July 2020 and responding "no" to current or past mental health diagnosis in March 2021).

---

[3] In fact, the cover sheet transmitting the jail records to the Social Security Administration indicates the recordkeeper "is not the Custodian of mental health records." AR 698.

### 2. Dr. Catlin Opinion

Second, Dr. Catlin's opinion does not constitute substantial evidence of A.M.'s mental health issues absent substance use, and the ALJ's treatment of Dr. Catlin's opinion is inconsistent. The ALJ states that "[b]ased on the record . . . the claimant was sober from 2019, his last drug treatment program through April 2021 when the claimant underwent evaluation conducted by Dr. Catlin." AR 27. Although Dr. Catlin's opinion states A.M. had been sober since 2019, as self-reported by A.M., AR 948, 951, the record indicates otherwise. As noted above, jail intake records from May 2019, July 2020, and March 2021 note A.M. was under the influence at the time of most of his arrests. Additional health records show that on December 6, 2019, A.M. tested positive for cocaine and opiates in his urine and had used marijuana, meth, and cocaine "up to the day of admission" at the health facility. AR 1015, 1021. A.M. also testified that the "longest I was probably [] sober after the [treatment] program [was] like two, three months." AR 59. Therefore, Dr. Catlin's opinion may not reflect A.M.'s mental health symptoms absent substance use, and A.M.'s failure to disclose his substance use since 2019 calls into the question the supportability of the opinion. *See* SSR 13-2p ¶ 9(a)–(b).

In addition, the Court notes that the ALJ erred by finding Dr. Catlin's opinion "less persuasive" because her objective evaluations of A.M. did not support her conclusions, yet still relied heavily on her opinion during the materiality analysis over the opinions of doctors to which the ALJ afforded more weight. *See* AR 25–28; 20 C.F.R. § 404.1520c(a), (b)(2) (instructing that an ALJ must explain how they "considered the supportability and consistency factors for a medical source's medical opinions," as these are the "most important factors" when determining the persuasiveness of a medical opinion).

### 3. Dr. Arnold's Treatment Notes

Finally, the excerpts from Dr. Arnold's treatment notes selectively highlighted by the ALJ are not substantial evidence demonstrating A.M. experienced "improved signs and symptoms" while undergoing substance abuse treatment. AR 28. For example, although the ALJ cites treatment notes from November 21, 2021, indicating A.M.'s "memory was

8

intact with unremarkable thought content and process" and that A.M. "was a low risk of harming himself or others," AR 27, the ALJ omits that the notes also state A.M. reported feeling strange, his medication for attention and concentration was not working, he still had nightmares, and he had limited insight and impaired judgment. AR 1306. The ALJ also points to March 7, 2022, treatment notes that A.M.'s sleep improved and nightmares decreased, but ignores that A.M. was self-isolating, shutting down, experiencing sadness, reckless/self-destructive behaviors, difficulty experiencing positive emotions, and limited insight and impaired judgment, and was still using marijuana and cocaine. AR 1276–79.

By cherry-picking from Dr. Arnold's notes, the ALJ impermissibly substituted his own judgment for that of Dr. Arnold's medical opinion. *See Tacket v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999); *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) (noting an ALJ "cannot arbitrarily substitute his or her own judgment for competent medical opinion," and must not "succumb to the temptation to play doctor and make [his or her] own independent medical findings"); *cf. Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) ("We cannot affirm the examiner's conclusion simply by isolating a specific quantum of supporting evidence."). He effectively ignored Dr. Arnold's written medical opinion, which was based on the totality of her contacts with A.M. every two to four weeks, *see* AR 1047, and which he already found persuasive when finding A.M. disabled at step three in the initial sequential analysis. AR 25.

In sum, the ALJ erred at step three of the materiality analysis, and ultimately in finding A.M.'s substance use material, because he applied the wrong standard and his conclusion that A.M. no longer met the paragraph B criteria of listing 12.15 is unsupported by substantial evidence. The ALJ's decision is therefore reversed.

**B.     Remand for Calculation and Award of Payments is Appropriate**

Although courts typically remand upon reversal for further proceedings, courts have discretion to remand for the immediate award of benefits if: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether

9

1    claimant testimony or medical opinion; and (3) if the improperly discredited evidence were
2    credited as true, the ALJ would be required to find the claimant disabled on remand."
3    *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison v. Colvin*, 759
4    F.3d 995, 1020–21 (9th Cir. 2014)); *Young v. Comm'r Soc. Sec. Admin.*, 214 F. Supp. 3d
5    987, 999 (D. Or. 2016).
6          The parties largely dispute the first requirement of whether there is a fully
7    developed record "free from conflicts and ambiguities, and [whether] 'all essential factual
8    issues have been resolved.'" *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015)
9    (citation omitted); Opp'n 2. The Commissioner does not appear to argue the record is not
10   fully developed, but rather that there are "inconsistencies between [the claimant's]
11   testimony and the medical evidence in the record," and that evidence overlooked by the
12   ALJ "'casts into serious doubt' the claimant's claim to be disabled." *See Dominguez*, 808
13   F.3d at 407; Opp'n 2. Specifically, the Commissioner urges there "is an open question as
14   to whether Plaintiff's substance abuse was material" based on the jail records, a medical
15   opinion from Dr. Khoi, and treatment notes from Dr. Arnold. Opp'n 4–6.
16         As discussed above, the jail records do not constitute substantial evidence for the
17   materiality analysis. Next, the Commissioner notes that Dr. Khoi "opined that Plaintiff
18   had mild or no limitations in performing simple tasks" in contrast to "three medical
19   opinions that Plaintiff has multiple marked limitations." Opp'n 5. But the Commissioner
20   also states that A.M. "exhibited poor effort during the examination" such that "Dr. Khoi
21   was unable to assess Plaintiff's abilit[ies]." Opp'n 5. Thus, the Commissioner incidentally
22   argues Dr. Khoi's opinion cannot constitute substantial evidence because it lacks
23   supportability. *See Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022)
24   ("Supportability means the extent to which a medical source supports the medical opinion
25   by explaining the 'relevant . . . objective medical evidence.'"). Finally, the Commissioner
26   pulls excerpts from Dr. Arnold's treatment notes to support his argument, but does not
27   actually challenge the persuasiveness of Dr. Arnold's medical opinion. *See* Opp'n 5–6.
28   The Court is not convinced that these excerpts accurately reflect the examinations

10

1  conducted by Dr. Arnold, call into question the overall persuasiveness of her medical
2  opinion, or raise a factual issue requiring further consideration.

3  As to the second requirement, the Commissioner hardly disputes that the ALJ
4  committed reversible error, and the Court has already found as much. *See Dominguez*, 808
5  F.3d at 407 ("The district court must first determine that the ALJ made a legal error, such
6  as failing to provide legally sufficient reasons for rejecting evidence."); Opp'n 1 ("[T]he
7  Commissioner believes that remand pursuant to sentence four of 42 U.S.C. § 405(g) is
8  appropriate . . . because the ALJ allegedly erred.").

9  As to the third element, because "the ALJ found that [A.M.] would be disabled
10 under the Social Security Act when considering [his] substance use" and "the materiality
11 finding was in error, the ALJ would be required to find [A.M.] disabled on remand." *See*
12 *Kathryn L.M. v. Comm'r of Soc. Sec.*, No. 19-cv-07687-KAW, 2021 WL 4932727, at *3
13 (N.D. Cal. Mar. 29, 2021) (deciding "an award of benefits is proper"). Such a finding
14 would not impermissibly rest only on "medical opinions that project the nature, severity,
15 and functional effects if the claimant were to stop using drugs or alcohol." *See* SSR 13-2p
16 ¶ 7(b) & n.19. Dr. Arnold's opinion states A.M. "has periods of sobriety where his mental
17 health disorder was [*sic*] still debilitating." And A.M. testified that his mental health
18 symptoms worsened during his two- or three-month period of sobriety after leaving a
19 treatment program. AR 59. Because there is no evidence in the record that A.M.'s mental
20 impairments would improve to the point of nondisability absent substance use, A.M.'s
21 substance use is not material. *See* SSR 13-2p.

## IV. CONCLUSION

The Court REVERSES the ALJ's decision and REMANDS the matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits

**IT IS SO ORDERED.**

Dated: January 27, 2025          _____
                                  NATHANAEL M. COUSINS
                                  United States Magistrate Judge

11